Mr. Edward A. Feaver Secretary, Department of Children and Families 1317 Winewood Boulevard Tallahassee, Florida 32399-0700
Dear Secretary Feaver:
On behalf of the Child Abuse Task Force appointed by Governor Chiles to study approaches to combating child abuse, you ask substantially the following questions:
1. Do current statutory provisions authorize the Department of Children and Families to obtain, without court order or parental consent, health records of children alleged to be dependent who may have been exposed to a sexually transmissible disease?
2. Does section 228.093, Florida Statutes, authorize the Department of Children and Families to have access to school records of children who are the subjects of child abuse investigations?
In sum:
1. Section 402.115, Florida Statutes, effective July 1, 1998, authorizes the Department of Children and Families to obtain, without the necessity of a court order or parental consent, records from the Department of Health regarding children who are alleged to be dependent and who are suspected to have been exposed to a sexually transmitted disease.
2. Section 228.093, Florida Statutes, authorizes the Department of Children and Families to have access to school records of children who are the subjects of child abuse investigations when there is an emergency.
Question One
The Department of Children and Families (DCF) is the lead agency in providing comprehensive protective services for children who have been abandoned, abused, or neglected by their parents, legal custodians or caregivers. Section 415.505, Florida Statutes, requires DCF to be capable of receiving and investigating reports of known or suspected child abuse or neglect twenty-four hours a day, seven days a week.[1] Section 39.401(1)(b), Florida Statutes, authorizes a law enforcement officer or an authorized agent of DCF to take a child into custody if the officer or agent has reasonable grounds to believe that the child has been abandoned, abused, or neglected, is suffering from illness or injury, or is in immediate danger from his surroundings and that his removal is necessary to protect the child.
If a child is taken into custody by, or is delivered to, an authorized agent of DCF, the agent must review the facts supporting the removal with DCF legal staff to determine whether probable cause exists for the filing of an emergency shelter petition.[2] If the facts are sufficient to support such a petition and the child has not been returned to the parent or legal guardian, DCF must file a petition and schedule a hearing to be held within twenty-four hours of the child's removal. When any child is taken into custody and is to be detained in shelter care, DCF is authorized to have a medical screening performed on the child without authorization from the court or consent of the parent or legal custodian.[3] In such instances, the reports of such screening would be available to DCF. A judge may also order a child in the physical custody of DCF to be examined or treated by a health care professional.[4]
In addition, section 415.507, Florida Statutes, specifically provides that any person required to investigate cases of suspected child abuse may cause a child alleged to have been sexually abused to be referred for diagnosis to a licensed physician or emergency department in a hospital without consent of the child's parents or guardian. Medical treatment, however, must be consented to by the child's parents or guardian, or pursuant to court order. Effective October 1, 1998, the statute is renumbered as section 39.304, Florida Statutes, and specifically provides that any facility licensed under Chapter 395, Florida Statutes, shall provide to the department any photograph or report on examinations made or X-rays taken pursuant to this section, or copies thereof, for the purpose of investigation or assessment of cases of abuse, abandonment, neglect, or exploitation of children.[5]
Your inquiry, however, concerns DCF's access to existing health records of a child who may have been exposed to a sexually transmissible disease. Chapter 384, Florida Statutes, constitutes the "Control of Sexually Transmissible Disease Act [Act]."[6]
Section 384.23(1), Florida Statutes, states that the term "Department" refers to the Department of Health. The Act provides that physicians and other health care professionals may examine and provide treatment for a sexually transmissible disease to any minor without securing the consent of the parents or guardian. Specifically, section 384.30, Florida Statutes, provides:
"(1) The department and its authorized representatives, each physician licensed to practice medicine under the provisions of chapter 458 or chapter 459, each health care professional . . . who is acting pursuant to the scope of his or her license, and each public or private hospital, clinic, or other health facility may examine and provide treatment for sexually transmissible diseases to any minor, if the physician, health care professional, or facility is qualified to provide such treatment. The consent of the parents or guardians of a minor is not a prerequisite for an examination or treatment.
(2) The fact of consultation, examination, and treatment of a minor for a sexually transmissible disease is confidential and exempt from the provisions of s. 119.07(1) and shall not be divulged in any direct or indirect manner, such as sending a bill for services rendered to a parent or guardian, except as provided in s. 384.29."
Any person making a diagnosis of or treating a person with a sexually transmissible disease, and each laboratory performing a test for such diseases that produces a positive result, is required to report such facts to the Department of Health.[7]
Section 384.29, Florida Statutes, provides for the confidentiality of information and records of sexually transmissible diseases held by the Department of Health. The statute provides for strict confidentiality of such records and provides that such information may not be released except as provided therein. Section384.29(1)(e), Florida Statutes, allows the release of information and records of the Department of Health "[w]hen made to the proper authorities as required by chapter 415."
While Chapter 415, Florida Statutes, does not expressly provide access to medical records generated prior to DCF's investigation of dependency, section 402.115, Florida Statutes, was created during the 1998 legislative session to read:
"Notwithstanding any other provision of law to the contrary, the Department of Health and the [Department of Children and Families] may share confidential information or information exempt from disclosure under chapter 119 on any individual who is or has been the subject of a program within the jurisdiction of each agency. Information so exchanged remains confidential or exempt as provided by law."[8]
Falling within the scope of this statute are the programs under the "Control of Sexually Transmissible Disease Act" that are conducted by the Department of Health; the program outlined in Chapter 415, Florida Statutes, for the prevention of abuse and neglect of children carried out by DCF; and the dependency program outlined in Chapter 39, Florida Statutes, also carried out by DCF. Thus, a report of a positive result by a physician testing a minor for a sexually transmissible disease pursuant to section 384.30, Florida Statutes, may be made available to the Department of Children and Families by the Department of Health when an abused or neglected child is in the physical custody of DCF.
Therefore, in light of the enactment of section 402.115, Florida Statutes, it is my opinion that there is authority for the Department of Children and Families to obtain, without the necessity of a court order or parental consent, records from the Department of Health regarding children who are alleged to be dependent and are in the physical custody of Children and Families and who may have been exposed to a sexually transmitted disease.
In addition, this office has been advised by the DCF that those children left in the custody of the their families during the pendency of the investigation, while not clients of DCF, are considered to be participating in a program of the department. Since the Legislature has expressed a greater recognition that information sharing between agencies may be in the best interests of the children when conducting such investigations of abuse, abandonment, or neglect, and in light of the above, I am of the view that there is authority for the Department of Children and Families to obtain, without the necessity of a court order or parental consent, records from the Department of Health regarding children who are alleged to be dependent and who may have been exposed to a sexually transmitted disease.[9]
Question Two
Your second question concerns DCF's access to student records while investigating alleged child abuse by a parent, guardian, or caregiver. This office has been advised that such information may be necessary in conducting such an investigation. While recent amendments to the child protection statutes have reflected a growing recognition that information sharing among agencies is often in the best interests of the child, access to student records is still controlled by section 228.093, Florida Statutes. The statute provides:
"Right of privacy. — Every pupil or student shall have a right of privacy with respect to the educational records kept on him or her. Personally identifiable records or reports of a pupil or student, and any personal information contained therein, are confidential and exempt from the provisions of s. 119.07(1). No state or local educational agency, board, public school, area technical center, community college, or institution of higher education in the State University System shall permit the release of such records, reports, or information without the written consent of the pupil's or student's parent or guardian, or of the pupil or student himself or herself if he or she is qualified as provided in this subsection, to any individual, agency, or organization."[10]
The statute, however, recognizes certain exceptions. Section 228.093(3)(d)8., Florida Statutes, authorizes the release of such information to
"[a]ppropriate parties in connection with an emergency, if knowledge of the information in the pupil's or student's educational records is necessary to protect the health or safety of the pupil, student, or other individuals."
In Attorney General Opinion 87-10, this office considered whether the Department of Health and Rehabilitative Services had access to school records when conducting an investigation of child abuse, or conducting a dependency or delinquency investigation. This office, having examined the provisions of section 228.093, Florida Statutes, concluded that under ordinary circumstances, the statute does not permit the department to have access to confidential student records. This office recognized, however, that section 228.093(3)(d)8., Florida Statutes, permits release of student records to appropriate parties in cases of emergency when necessary to protect the health or safety of the student or other individuals.
While section 228.093, Florida Statutes, provides no definition of the word "emergency," the confidentiality and release of student records is also regulated by federal law for state educational programs receiving federal funds.[11]
This office suggested that in the absence of a statutory definition of "emergency" for purposes of section 228.093, Florida Statutes, federal criteria should be used.[12] Section 99.36, 34 Code of Federal Regulations, sets forth what conditions apply to disclosure of information in health and safety emergencies:
"(a) An educational agency or institution may disclose personally identifiable information from an education record to appropriate parties in connection with an emergency if knowledge of the information is necessary to protect the health or safety of the student or other individuals.
(b) Nothing in this Act or this part shall prevent an educational agency or institution from —
(1) Including in the education records of a student appropriate information concerning disciplinary action taken against the student for conduct that posed a significant risk to the safety or well-being of that student, other students, or other members of the school community;
(2) Disclosing appropriate information maintained under paragraph (b)(1) of this section to teachers and school officials within the agency or institution who the agency or institution has determined have legitimate educational interests in the behavior of the student; or
(3) Disclosing appropriate information maintained under paragraph (b)(1) of this section to teachers and school officials in other schools who have been determined to have legitimate educational interests in the behavior of the student.
(c) Paragraphs (a) and (b) of this section will be strictly construed."
The determination of what constitutes an emergency necessitating the release of student records to the department involves mixed questions of law and fact that this office cannot answer, but must be determined on a case-by-case basis by district school personnel vested with that responsibility.
While there are other statutes specifically providing for the sharing of records between school districts and DCF, these provisions are generally tied to particular programs and do not provide general authorization for such record-sharing.[13] The Legislature, therefore, may wish to readdress this matter to more clearly define those instances in which mandatory information sharing between these agencies is in the best interests of the child.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tall
[1] Section 173, Ch. 98-403, Laws of Florida, repeals s. 415.505, Fla. Stat., effective October 1, 1998. But see, s. 31 of the act which renumbers s. 415.504, Fla. Stat., as s. 39.201, Fla. Stat., and creates subsection (5) which requires the department to be capable of receiving and investigating reports of known or suspected child abuse, abandonment or neglect twenty-four hours a day, seven days a week. And see, ss. 39.301 and 39.302, Fla. Stat., created by ss. 38 and 39, Ch. 98-403, Laws of Florida, which respectively provide for the initiation of protective investigations and protective investigations of institutional child abuse, abandonment, or neglect.
[2] Section 39.401(3), Fla. Stat. As amended by s. 57, Ch. 98-403, Laws of Florida, effective October 1, 1998, the agent's review must be conducted with an attorney representing the department to determine whether probable cause exists for the filing of a shelter petition.
[3] See, s. 39.407(1), Fla. Stat.; but see, subsection (2) of the statute providing that where a child in the custody of DCF has not been committed to DCF pursuant to s. 39.41, Fla. Stat., a court order or parental consent is required for medical treatment.
[4] Section 39.407(3) and (4), Fla. Stat.
[5] Section 42 of Chapter 98-403, Laws of Florida.
[6] Section 384.21, Fla. Stat. And see, s. 381.001(2), Fla. Stat., stating that "It is the intent of the Legislature that the department, in carrying out the mission of public health, focus attention on identifying, assessing, and controlling the presence and spread of communicable diseases[.]"
[7] Section 384.25, Fla. Stat. Cf., ss. 415.1034 and 415.504, Fla. Stat., imposing, a mandatory reporting requirement on persons, including physicians, who suspect abuse.
[8] See, s. 19, Chapter 98-191, Laws of Florida, effective July 1, 1998.
[9] In light of the additional restrictions on the release of HIV test results, it may be advisable to seek legislative clarification regarding DCF's authority to obtain such records from the Department of Health.
[10] Section 228.093(3)(d), Fla. Stat.
[11] See, 20 U.S.C. s. 1232g(b)(1), which provides that no funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records or personally identifiable information contained in such records, other than directory information, of students without the written consent of their parents to any individual, agency, or organization except as provided therein.
[12] See, Tape, Florida Senate Education Committee, April 8, 1977, considering Senate Bill 359 (subsequently codified as s. 228.093, Fla. Stat.) in which the bill's sponsor stated that the purpose of the proposed law relating to the confidentiality and release of student records was to bring state law into compliance with federal requirements.
[13] See, e.g., s. 228.093(3)(d)12., Fla. Stat., and s. 230.2316, Fla. Stat. the "Dropout Prevention Act."